**STATE OF WEST VIRGINIA**

**SUPREME COURT OF APPEALS**

**Jefferson County Vision, Inc.,**
**Petitioner**

**vs)  No. 19-0774**

**Public Service Commission of West Virginia**
**and Jefferson Utilities, et al.,**
**Respondents**

**FILED**
**June 15, 2020**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**MEMORANDUM DECISION**

Jefferson County Vision, Inc., ("JCV"),[1] appeals the August 2, 2019, order of the Public Service Commission of West Virginia ("Commission") that dismissed its pending complaint regarding the issuance of an emergency certificate of convenience and necessity to Jefferson Utilities, Inc. ("JUI"),[2] to extend water service to an industrial park site known as Jefferson Orchards in Ranson, West Virginia. The Commission has filed its requisite Statement of Reasons for the Entry of its Order.[3]

This Court has considered the parties' briefs, oral arguments, and the appendix record. Upon application of the standard of review and the pertinent authorities, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the final order of the Commission is appropriate under Rule 21 of the Rules of Appellate Procedure.

---

[1]According to JCV's complaint, it is a nonprofit corporation formed "to promote, among other things, responsible development within Jefferson County including proposed utility infrastructure."

[2]JUI is a privately owned company that provides water treatment and potable water delivery service in Jefferson County. As such, it is regulated as a public utility.

[3]Christopher P. Stroech appeared on behalf of JCV, and John J. Meadows, Todd Swanson, Peter J. Raupp, and Ryan D. Ewing represented JUI. Jessica M. Lane and Natalie N. Terry responded for the Commission. Susan J. Riggs filed an amicus curiae brief on behalf of Roxul, USA, Inc., in support of the Commission's decision.

1

On July 12, 2018, the Commission approved an application filed by JUI for an emergency certificate of convenience and necessity to extend water service to Jefferson Orchards for use by a new manufacturing facility to be constructed in the industrial park. Roxul USA, Inc., planned to build and operate the Rockwool stone wool manufacturing facility in Jefferson Orchards and to receive water from JUI. The West Virginia Infrastructure and Jobs Development Council ("WVIJDC"), a public economic development authority that provides funding for public utility expansion and renovation projects throughout the state, approved the water line extension project and designated it as an "emergency project."[4] The estimated cost of the project was $4,850,000 and was to include the installation of approximately 18,050 linear feet of sixteen-inch water line, a 795,000-gallon water storage tank, a 1,200 gallon per minute triplex pressure booster station, an altitude fault vault, and all other necessary appurtenances. The cost was to be funded by a $4,520,000 loan from the WVIJDC to the Jefferson County Development Authority ("JCDA") and $330,000 provided by JUI from its cash flow. JUI indicated that the project would have no impact on the rates of its existing customers. Following public notice[5] and a favorable evaluation by the Commission staff, the Commission granted the application for the certificate in a July 12, 2018, order subject to certain conditions. Specifically, the order provided:

> IT IS FURTHER ORDERED that if there are any changes in the Project plans or scope, as well as the terms of any financing other than grants or loans that impact the rates, Jefferson Utilities, Inc., must seek Commission approval of those changes.

> IT IS FURTHER ORDERED if there are any changes in the plans or scope, or terms of financing of the Project, or changes in rates associated with the Project, Jefferson Utilities, Inc., must petition to reopen for Commission approval of such changes. Changes in project costs of financing do not require separate approval if the changes do not affect rates and

---

[4]*See* W.Va. Code § 31-15A-2(h) (1998) (defining "emergency project" as "a project which the [WVIJDC] has determined: (1) Is essential to the immediate economic development of an area of the state; and (2) will not likely be developed in that area if construction of the project is not commenced immediately").

[5]West Virginia Code § 24-2-11 (2017) sets forth the requirements for a certificate of public convenience and necessity and provides for notice of any application for a certificate to be made by publication. The statute further allows for a formal hearing to be waived in the absence of substantial protest. Because no protests or petitions to intervene were filed in response to the publication providing notice of JUI's application, no public hearing was held.

> Jefferson Utilities, Inc., submits an affidavit from a certified
> public accountant attesting to the lack of rate impact.[6]

(Footnote added).

Six months after the Commission approved the application and granted the certificate, David Tabb, a JUI customer and non-party to the certificate case, filed a motion seeking to have the Commission review the project and issue a stop work order. Mr. Tabb asserted that JUI had violated the July 12, 2018, certificate order by not seeking the Commission's approval of changes to the project. In that regard, Mr. Tabb noted that funding for the project was no longer being provided by JCDA through a WVIJDC loan; that the construction bids received for the project exceeded the initial cost estimate by at least fourteen percent; and that Roxul/Rockwool had agreed to provide substitute funding and had executed agreements with JUI to replace those between JUI and JCDA. Thereafter, the Commission staff recommended that the Commission reopen the certificate case based on its concern that the project revisions would have an impact on customer rates. The Commission staff also sought to join Roxul/Rockwool as a necessary party.

Roxul/Rockwool opposed the Commission staff's petition to join it as a party, maintaining that it had simply "stepped into the shoes" of JCDA and because JCDA was not a party to the certificate case, there was no reason for it to be made a party. JUI also filed a response in which it acknowledged that the project costs had increased from $4,850,000 to $5,605,229 based on the construction bids received and that Roxul/Rockwool had replaced JCDA as the funding source. However, JUI maintained that the scope of the project remained the same and the financing changes would not impact customer rates because JUI's share of the costs remained at $330,000 as approved by the Commission in the July 12, 2018, order granting the certificate.

On February 22, 2019, the Commission issued a procedural order reiterating the conditions set forth in the July 12, 2018, order that would require JUI to request further approval from the Commission for project changes. The Commission held its ruling on whether to reopen the certificate case in abeyance pending submission of an affidavit from JUI's certified public accountant regarding any rate impact as a result of the project changes. JUI was also required to file with the Commission a detailed revenue requirement calculation and cash flow statement as well as sample journal entries demonstrating the recording of the transfer of the project to Roxul.

---

[6]These conditions are consistent with West Virginia Code § 24-2-11(j) (2017), which provides: "A public utility, including a public service district, which has received a certificate of public convenience and necessity after July 8, 2005, from the commission and has been approved by the Infrastructure and Jobs Development Council is not required to, and cannot be compelled to, reopen the proceeding if the cost of the project changes but the change does not affect the rates established for the project."

The requisite information was filed by JUI with the Commission on March 14, 2019. Approximately ten days before, on March 4, 2019, which was almost nine months after the period to intervene in the certificate case expired, the petitioner herein, JCV, and another JUI customer, Leigh Smith, filed a joint petition to intervene in the closed certificate case. That same day, they also filed a petition for reconsideration of the Commission's February 22, 2019, order, arguing that JUI was required to seek approval of the substitute funding from Roxul/Rockwool. They also argued that the change in the funding source would impact customer rates. JUI filed responses objecting to these petitions.

By order issued March 26, 2019, the Commission denied the Commission staff's petition to reopen the certificate case and JCV and Ms. Smith's petition for reconsideration of the February 22, 2019, order. The Commission found that the scope and plans for the project had not changed and the cost increase and funding revisions were not going to impact customer rates. As such, the Commission concluded that its approval of the project changes was not required.

On April 5, 2019, JCV and Ms. Smith filed a petition for reconsideration of the March 26, 2019, order. They claimed a denial of due process because they were not allowed to pursue and dispute factual issues regarding the project. Following a response from JUI, the Commission denied the petition for reconsideration by order entered May 3, 2019.

While JCV and Ms. Smith were attempting to intervene in the certificate case, they also sought to reopen the certificate case by filing a completely separate complaint with the Commission on January 22, 2019, which is now the subject of this appeal. In that complaint, they alleged that JUI was in violation of the Commission's July 12, 2018, order for failing to reopen the certificate case and secure the Commission's approval of the changes to the scope, costs, and financing of the project. JCV and Ms. Smith indicated that they filed their complaint based on a local newspaper article that reported the financing changes and the increased costs, and noted that construction had begun. JCV and Ms. Smith asserted that the project changes were likely to increase the rates of other JUI customers and sought interim relief in the form of a stop work order. They also sought to have the Commission reopen the certificate case and issue a procedural order allowing for discovery and a hearing regarding the project.

By order entered on August 22, 2019, the Commission dismissed the complaint on the grounds that JCV and Ms. Smith were seeking the same relief that they sought in the closed certificate case. The Commission stated that although JCV and Ms. Smith were not parties to the certificate case, the Commission had decided all of issues raised in their complaint in the February 22, 2019, March 26, 2019, and May 3, 2019, orders entered in the certificate case. Accordingly, the Commission dismissed the complaint. This appeal followed.

4

Our standard of review for final orders entered by the Commission is well established:

> In reviewing a Public Service Commission order, we will first determine whether the Commission's order, viewed in light of the relevant facts and of the Commission's broad regulatory duties, abused or exceeded its authority. We will examine the manner in which the Commission has employed the methods of regulation which it has itself selected, and must decide whether each of the order's essential elements is supported by substantial evidence. Finally, we will determine whether the order may reasonably be expected to maintain financial integrity, attract necessary capital, and fairly compensate investors for the risks they have assumed, and yet provide appropriate protection to the relevant public interests, both existing and foreseeable. The court's responsibility is not to supplant the Commission's balance of these interests with one more nearly to its liking, but instead to assure itself that the Commission has given reasoned consideration to each of the pertinent factors.

Syl. Pt. 2, *Monongahela Power Co. v. Pub. Serv. Comm'n of W.Va.*, 166 W.Va. 423, 276 S.E.2d 179 (1981). To be more concise,

> "[t]he detailed standard for our review of an order of the Public Service Commission contained in Syllabus Point 2 of *Monongahela Power Co. v. Public Service Commission*, 166 W.Va. 423, 276 S.E.2d 179 (1981), may be summarized as follows: (1) whether the Commission exceeded its statutory jurisdiction and powers; (2) whether there is adequate evidence to support the Commission's findings; and, (3) whether the substantive result of the Commission's order is proper.

Syl. Pt. 1, *Central W.Va. Refuse, Inc. v. Pub. Serv. Comm'n of W.Va.*, 190 W.Va. 416, 438 S.E.2d 596 (1993).

JCV argues that the Commission committed procedural and legal error by dismissing its complaint as a "collateral proceeding." JCV maintains that it had the right to seek relief from the order issued in the certificate case by filing a separate complaint pursuant to 150 C.S.R. § 6.2.1 which provides:

> Any person or entity may complain to the Commission
> by petition substantially in the form of Form No. 1 attached to
> these Rules of anything done or omitted to be done by the
> public utility in violation of any of the provisions of the Public
> Service Commission laws of West Virginia[.]

*See also* W.Va. Code § 24-4-6 (1923). JCV also relies upon syllabus point eight of *Affiliated Const. Trades Foundation v. Public Serv. Comm'n of W.Va.*, 211 W.Va. 325, 565 S.E.2d 778 (2002), which holds:

> Any person or entity having a good faith reason to file
> a complaint against a public utility under West Virginia Code
> § 24-4-6 (1923) (Repl.Vol.2001) has standing to do so,
> notwithstanding the fact that such person or entity was not a
> party to prior proceedings for a certificate of convenience and
> necessity or other proceedings to which the complaint relates.

Upon review of the Commission's final order, it is clear that JCV's complaint was not dismissed as an impermissible collateral proceeding or for lack of standing. Rather, the Commission dismissed the complaint because JCV did not present any new facts or substantive issues that were not adequately addressed in the certificate case. In other words, the Commission considered the merits of all the arguments made by JCV in the orders entered on February 22, 2019, March 26, 2019, and May 3, 2019, in the certificate case and found no basis to reopen the matter. Specifically, the Commission found no change in the project plans or scope based upon the information contained in the filings made in the certificate case in response to the motion to reopen the proceeding.[7] Likewise,

---

[7]In its March 26, 2019, order, the Commission rejected the contention that the scope and project plans had changed, stating:

> The JCV and Ms. Smith's petition for reconsideration
> asserted that the scope of the Project has been changed to
> reflect approximately 1,600 feet less of sixteen-inch pipe from
> the preliminary design filed in the application and the final bid
> cost. March 4, 2019 Petitioner for Reconsideration at 3. They
> also claimed that the Project has changed because the amount
> of water to be sold to ROXUL has decreased from the original
> projections. *Id*. The assertions made by JCV and Ms. Smith
> are not correct. A reduction of the length of the water line
> installed by approximately 1,600 feet, for a Project of this size,
> between the final design and bids to the preliminary design is
> not significant and does not change the scope of the Project.
> Furthermore, there is no difference in the annual revenue to be

the Commission found the changes in the project's costs and financing did not require reopening of the certificate case for Commission approval because JUI submitted an affidavit from its certified public accountant attesting to a lack of rate impact.[8] Thus, JCV's complaint was only dismissed after the Commission determined there were insufficient grounds to reopen the certificate case.

JCV also argued that it was denied due process because the Commission did not permit discovery or hold a hearing before dismissing its complaint. However, the record shows that extensive discovery occurred in the certificate case. Moreover, JCV did in fact serve additional discovery on JUI after it filed its January 22, 2019, complaint. With respect to a hearing, the Commission was not required to hold a hearing in the certificate case because no protest was filed in response to the notice publication.[9] Absent any new facts

---

generated by JUI from ROXUL as filed in the application and as shown in the March 14, 2019 JUI response to the Procedural Order. The requests to reopen based on changes to the Project scope and Project-related revenue are unfounded.

[8]With respect to the changes to financing and costs, the Commission made the following findings in the March 26, 2019 order:

JUI is in compliance with the Final Order and has supplied an affidavit signed by its certified public accountant attesting that there will be no rate impact related to the increased Project cost and change in source of Project financing. Response to Procedural Order at Ex. A. JUI also provided its projected revenue requirement calculation, projected cash flow analysis and sample journal entries, all indicating that the revised Project will not result in any additional rate base or impact current rates. The sample journal entries record the transfer of approximately $5.275 million of utility plant from ROXUL to JUI with an equal amount charged to Contributions-in-aid-of-Construction (CIAC). JUI did not propose an amortization of the CIAC and the Commission will not recognize an amortization of the CIAC in a future rate proceeding of JUI. Reopening this case for Commission approval of the changes to Project costs and source of funding is not warranted because the changes do not affect JUI rates.

[9]*See* note 5, *supra.*

7

or substantive issues warranting a reopening of the certificate case, there was no requirement that the Commission hold a hearing before dismissing JCV's complaint.

Simply stated, the Commission has not exceeded its statutory jurisdiction and powers, and there is adequate evidence to support the Commission's findings. Based upon our careful review of the record in this matter, we find that substantive result of the Commission's final order is proper. Accordingly, the Commission's August 2, 2019, order is affirmed.[10]

Affirmed.

**ISSUED:** June 15, 2020

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

---

[10] In its Statement of Reasons for Entry of its Order, the Commission argued that this matter is "technically moot" because the water line extension portion of the project was completed in October 2019. However, the record showed that the water tank and booster station had yet to be installed.

8